CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 7 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID PAUL OQUINN, )<br>    Plaintiff, ) | Civil Action No. 7:07cv00494 |
| )<br>v. ) | **MEMORANDUM OPINION** |
| )<br>DOUG BAKER, et al., )<br>    Defendants. ) | By: Hon. Glen E. Conrad<br>United States District Judge |

Proceeding <u>pro se</u>, plaintiff David Paul Oquinn filed this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343, in the United States District Court for the Eastern District of Virginia ("Eastern District") on December 27, 2006. In an order entered on October 12, 2007, that Court observed that the plaintiff and defendants all reside within the Western District of Virginia and that all events pertaining to the case occurred here; accordingly, the case was transferred to this district, pursuant to 28 U.S.C. § 1406(a).[1]

Plaintiff, an inmate in the Southwest Virginia Regional Jail Authority facility in Haysi, Virginia ("Haysi"), alleges that defendants violated his constitutional rights when they failed to convey to him a message to call his family, which prevented him from learning that his brother had died and thus rendered him unable to obtain a furlough to attend his brother's funeral. Plaintiff further complains that defendants failed to address his grievances, and that such failure led to his being stabbed. Additionally, plaintiff's complaint includes an undated document bearing the heading, "To Whom This My [sic] Concern," setting forth a number of cursory allegations regarding prison conditions at Haysi. Plaintiff seeks $250,000.00 in damages and injunctive relief.[2] Upon

---

[1] The Eastern District determined that plaintiff was ineligible to proceed <u>in forma pauperis</u>, and directed plaintiff to pay the filing fee of $350. Plaintiff's payment was received by the Eastern District on April 5, 2007.

[2] Plaintiff requests that "all involved should loss [sic] there [sic] jobs."

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID PAUL OQUINN, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:07cv00494 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DOUG BAKER, et al., | ) | By: Hon. Glen E. Conrad |
|     Defendants. | ) | United States District Judge |

Proceeding pro se, plaintiff David Paul Oquinn filed this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343, in the United States District Court for the Eastern District of Virginia ("Eastern District") on December 27, 2006. In an order entered on October 12, 2007, that Court observed that the plaintiff and defendants all reside within the Western District of Virginia and that all events pertaining to the case occurred here; accordingly, the case was transferred to this district, pursuant to 28 U.S.C. § 1406(a).[1]

Plaintiff, an inmate in the Southwest Virginia Regional Jail Authority facility in Haysi, Virginia ("Haysi"), alleges that defendants violated his constitutional rights when they failed to convey to him a message to call his family, which prevented him from learning that his brother had died and thus rendered him unable to obtain a furlough to attend his brother's funeral. Plaintiff further complains that defendants failed to address his grievances, and that such failure led to his being stabbed. Additionally, plaintiff's complaint includes an undated document bearing the heading, "To Whom This My [sic] Concern," setting forth a number of cursory allegations regarding prison conditions at Haysi. Plaintiff seeks $250,000.00 in damages and injunctive relief.[2] Upon

---

[1] The Eastern District determined that plaintiff was ineligible to proceed in forma pauperis, and directed plaintiff to pay the filing fee of $350. Plaintiff's payment was received by the Eastern District on April 5, 2007.

[2] Plaintiff requests that "all involved should loss [sic] there [sic] jobs."

review of the record, the court concludes that the plaintiff has not stated a claim upon which relief may be granted.[3] Therefore, the court will dismiss the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).[4]

## I. Factual Summary[5]

Plaintiff alleges that defendant Doug Baker "show's [sic] hatred to [him]," told him "he would see to it" that plaintiff went "some were [sic] were [sic] the big black boys will take care of [him]," and "stacks charges on" him. Regarding plaintiff's brother's death and funeral, plaintiff states that Baker "did not allow [him] to (or) [sic] tell [him] [he] needed to call [his] lawyer as [sic]

---

[3] In an order entered on January 9, 2007, the Eastern District directed plaintiff to submit a "statement under oath or penalty of perjury" that, inter alia, "[i]dentifies the nature of the action," and "[s]tates his belief that he is entitled to relief. . . ." Plaintiff never submitted any document in compliance with this directive. Additionally, the order of January 9, 2007, prohibited plaintiff "from filing any other pleadings, motions, memoranda, or materials not specifically required herein or otherwise specifically ordered by this court until he begins making payments on the filing fee." Nonetheless, plaintiff submitted a number of letters, both before and after he paid the filing fee, although he never submitted the requested statement. Given that plaintiff's submissions after filing the complaint concern the filing fee, his wish to have correspondence from the court mailed to his parents, and grievances regarding issues not relevant to the instant action and filed long after the commencement of this lawsuit, the court will not consider plaintiff's subsequent submissions.

Additionally, plaintiff is advised that 42 U.S.C. § 1997e(a) requires exhaustion of all available administrative remedies as a precondition to the filing of a prisoner's civil rights action; thus, a plaintiff who filed his lawsuit before exhausting administrative remedies cannot satisfy the § 1997e(a) requirement, even if he later demonstrates that he filed a grievance and appealed it to the highest extent of the prison's grievance procedure after commencing the lawsuit. See Dixon v. Page, 291 F.3d 485 (7th Cir. 2002), citing Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to exhaust even if the inmate demonstrates that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit). It is not clear that plaintiff has exhausted his administrative remedies regarding the issues raised in his post-filing submissions or in the claims addressed in this opinion. However, the court need not determine whether he has properly exhausted because it is clear that his complaint fails to state a claim upon which relief may be granted.

[4] Although plaintiff has paid the filing fee in this case, § 1915(e)(2) provides that, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that" it is frivolous, malicious, or fails to state a claim upon which relief may be granted. Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

[5] The court has adduced the facts from plaintiff's complaint.

2

to get a furlough so [he] could go to [his] brothers [sic] funeral." He adds that defendant Doug Silcox "told Jinnifer [sic] Sperrow that he would not tell [plaintiff] [his] brother had died" and then came into plaintiff's pod later "only to laugh in [plaintiff's] face."

Defendant Chris Yates, according to plaintiff, covered up plaintiff's grievances "that went missing." Plaintiff alleges that Yates "cover's [sic] for all his jailers [sic]" and refuses to "anwser [sic] the most important requests (or) grievance's [sic] filed." Plaintiff adds Yates placed plaintiff "on administrative hole [sic] time away from other inmates," and that Yates did this after plaintiff lost his brother and was "going crazy over him." In plaintiff's view, Yates "hates" him and "get[s] a kick out of [his] pain."

Plaintiff alleges that defendant Gilda Rose is "involved in lossing [sic] [plaintiff's] request form and grievance's [sic] form." He states that these forms warned that his "life was in danger," and that he was subsequently stabbed. Regarding Rose, plaintiff states that "she also didn't see to it that the right thing was done over making sure [plaintiff] was able to get to [his] brother's funeral."

Plaintiff presents a grievance form dated November 11, 2006, and the court quotes verbatim the substance of plaintiff's grievance:

> Rocky Deel, Jennifer Sperrow, among others called this jail to ask if the officer (Doug Silcox) would tell me to call home that it was an emergency. That my brother had died. The first time they called, he said he would. The second time he said he would not. And was very smart mouth with my family. I did not get to go to my brothers [sic] funeral because of Doug Silcox.

In the section asking, "What action would you like to see taken?" plaintiff added the following, which the court quotes verbatim:

> I feel as well as the rest of my family he sould [sic] lose his job. For such an act. The call he took was an emergency call. About a death in my family. And he did nothing to let me know my family had called. I'm also filing a (1983) form on him

3

as well. The only way I found out about my brother passing away was when I called home on Tuesday. My brother died Sunday morning.

The grievance form indicates that plaintiff received the following response on November 13, 2006:

According to our records, no immediate family member of yours called here to inform us of a death in your family. Our records also indicate that on November 8th Lt. Baker allowed you to call a family member after it was verified from the funeral home that your brother was there.

Plaintiff also included with his complaint a "Request for Information" dated December 5, 2005. Plaintiff stated:

Mr. Yates, Lieutenant Gillda has my grievance form from over two weeks ago. And they are supposted [sic] to be returned back to me in 9 days or less. The grievance was asking them to move Mr. Bateman out of here. Before something happens. I wouldn't think that no one would try to lose that grievance form would you. Please get me a copy of that. Thank you, or is a cover up realy [sic] happening. I need to know.

Plaintiff received the following response, dated December 7, 2005:

Lt. Rose has not informed me of any grievance form that you sent out to her. That doesn't mean its [sic] not there, I'm just not aware of it. Furthermore, a grievance form would not be "lost" by Lt. Rose or any other staff member for reasons of a "cover up." There is nothing to cover up in this situation, regardless of the little insinuations that you are making. The jail staff has done everything they need to do on thier [sic] end of things, you go ahead and do whatever you think you need to do.

As previously noted, plaintiff's complaint includes an undated document bearing the heading, "To Whom This My [sic] Concern," which sets forth a litany of complaints about conditions at Haysi. In addition to setting forth cursory allegations regarding the grievance system at Haysi, the document includes the following complaints: inmates at Haysi were not being given coffee in the morning; mail is opened outside of inmates' presence; inmates are "hardly ever" allowed to clean their cells; inmates are served "cold food," and are "NEVER" served hot food; canteen items cannot

4

be ordered by inmates who are "in the hole"; orange "Bob Barker shoe's [sic]" are sold to inmates for $25.00, rather than being given to them; "the heat is on full blast"; "sick people with (AIDS) [sic] and (TB) [sic]" are housed with other inmates; inmates are forced to comply with a 10:00 p.m. bedtime, rather than 11 p.m.; the guards verbally abuse, threaten, and taunt the inmates; there is only "one set of hair clippers for the hole [sic] jail"; there is "no law library"; "late at night," jailors slam doors "just to make it hard on [sic] us to sleep"; and inmates receive disciplinary charges for fighting and other disciplinary infractions, and these disciplinary infractions lead to inmates' placement in administrative segregation.

## II. Standard of Review

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proved consistent with the allegations of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); see also Bell Atlantic Corp. v. Twombly, 550 U.S. ___, slip op. at 8 (2007) (while the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; the Court specifically explained, id., slip op. at 18-24, that the Twombly analysis does not run counter to Swierkiewicz or impose a heightened pleading standard); Teachers' Retirement System of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007) (citing Swierkiewicz, 534 U.S. at 514, and stating that "a court may dismiss a complaint [for failure to state a claim upon which relief may be granted] only if it is clear that no relief could be granted

5

under any set of facts that could be proved consistent with the allegations").

## III. Analysis

Construing plaintiff's complaint liberally, the court has determined that plaintiff alleges that his civil rights were violated by the following: defendants' actions that allegedly led to his being unable to obtain a furlough to attend his brother's funeral; defendants have deprived him of his ability to seek satisfaction through the inmate grievance procedure; his placement in administrative segregation for disciplinary infractions; defendants' alleged failure to protect him from being stabbed; the living conditions at Haysi violate the Eighth Amendment's prohibition against cruel and unusual punishment; inmate mail is opened outside of the presence of the recipient; inmates are charged for shoes and other unspecified sundries; inmates are subjected to verbal abuse; and Haysi does not maintain a law library.

### A. Funeral Furlough

Inmates have no specific constitutional right to a furlough, whether for visitation of a sick relative or for the attendance of a family funeral. Brooks v. Dunn, 376 F. Supp. 976, 978 (W.D. Va. 1974); see also Hipes v. Braxton, 878 F. Supp. 56, 57 (W.D. Va. 1995). Furthermore, Virginia furlough statutes and regulations do not create a constitutionally protected liberty interest for inmates. Hipes, 878 F. Supp. 57-58. Accordingly, plaintiff has failed to state a claim under § 1983 regarding his being unable to obtain a furlough to attend his brother's funeral. West, 487 U.S. at 48. To the extent state law may lay out provisions that might have enabled plaintiff to obtain a furlough attend his brother's funeral, violations of state law by state officials do not provide basis for constitutional claims under § 1983, Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990), and this court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental

6

jurisdiction over such claim. Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

## B. Grievance Procedures

Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Accordingly, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Azeez v. De Robertis, 568 F. Supp. 8, 9-11 (N.D.Ill.1982). Under these principles, plaintiff has no actionable claim regarding defendants' responses to his grievances or their administration of the grievance process. Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

## C. Administrative Segregation

An inmates' liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir.1991). Furthermore, such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id. Courts have held that placement and long-

7

term detention in segregated confinement under Virginia's prison regulations does not give rise to any constitutionally protected liberty interest under Sandin. See, e.g., DeBlasio v. Johnson, 128 F. Supp.2d 315, 328-29 (E.D. Va. 2000), aff'd by Madison v. Johnson, 12 Fed. App'x. 149 (4th Cir. 2001) (unpublished). Thus, plaintiff has no due process claim concerning his confinement in segregation pursuant to disciplinary charges. Moreover, as he fails to allege that segregated confinement has caused him any significant physical or mental health injury, he fails to state any claim of cruel and unusual punishment in violation of the Eighth Amendment. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993). Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

### D. Failure to Protect

In order to raise an Eighth Amendment claim for failure to protect, an inmate must show that prison officials were deliberately indifferent to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish deliberate indifference, plaintiff must show that prison officials knew of and disregarded an excessive risk of harm; mere negligence as to his safety is insufficient. Id. at 838; Estelle v. Gamble, 492 U.S. 97, 104 (1976). Plaintiff's conclusory allegations do not show that his safety was in danger at any point. Although he claims that he filed a grievance regarding an inmate who allegedly stabbed him, he provides absolutely no details in support of this allegation and does not allege that he was seriously injured from this alleged stabbing.[6] Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2) and

---

[6] Significantly, plaintiff was given the opportunity to provide a statement detailing this claim, but he has failed to provide any amendments. Additionally, the preceding factual summary indicates that plaintiff's demonstration of exhaustion is insufficient as to this claim. See n. 3, supra.

8

1915A(b)(1), for failure to state a claim upon which relief may be granted.

## E. Prison Conditions

While the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Therefore, to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege, among other things, facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler, 989 F.2d at 1380-81; Helling v. McKinney, 509 U.S. 25 (1993). A plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991).

To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, see Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997), Strickler, 989 F.2d at 1380-1381, or that plaintiff's continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm, see Helling, 509 U.S. at 31. To satisfy the subjective element of a conditions claim, a plaintiff must show that the defendant officials acted with deliberate indifference toward the risk of harm. Farmer, 511 U.S. at 835; Taylor v. Freeman, 34 F.3d 266, 271 (4th Cir. 1994). To prove

9

deliberate indifference by an official, a plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. Id. at 837. Then, the plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Id. at 832.

> As the United States Court of Appeals for the Fourth Circuit stated in Strickler:
>
> The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment.

989 F.2d at 1381.

Plaintiff's allegations regarding conditions at Haysi are recapitulated in the preceding factual summary. Having reviewed the allegations, the court concludes that plaintiff has failed to allege facts sufficient to survive the court's sua sponte review. Plaintiff fails to allege any facts illustrating that Haysi officers were or should have been aware of any actual, serious risk to plaintiff arising out of the complained-of conditions, or that they knew or should have known that any of the complained-of conditions would cause plaintiff significant harm. Furthermore, plaintiff fails to claim that he sustained a serious or significant mental or physical injury; in fact, he alleges no injury whatsoever resulting from the alleged conditions at Haysi. In sum, plaintiff has not demonstrated that conditions are such that he has sustained a serious or significant injury or is at unreasonable risk of serious damage to his future health.[7, 8]

---

[7] See, e.g., Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (holding that the plaintiff failed to allege injuries that were "sufficiently serious to be constitutionally actionable," where the plaintiff stated that his exposure to environmental tobacco smoke resulted in breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy); Oliver v. Deen, 77 F.3d 156, 160 (7th Cir. 1996) (finding that evidence of "considerable" medical treatment for asthma related concerns following exposure to smoke did not establish

10

Case 7:07-cv-00494-GEC-mfu Document 18 Filed 11/07/07 Page 11 of 17 Pageid#: 74

Plaintiff has not alleged conditions that amount to cruel and unusual punishment and, therefore, fails to state a claim under the Eighth Amendment. Accordingly, plaintiff's claims regarding the living conditions at Haysi will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.[9]

### F. Mail

Plaintiff alleges that institutional officials have opened his mail outside of his presence. As

---

constitutionally significant injury); Alexander v. Tippah County, Miss., 351 F.3d 626, 631 (5th Cir. 2003) (stating that any injury incurred from vomiting and nausea which was not so severe as to require medical intervention or have lasting health effects, was de minimis). In short, plaintiff has not stated a claim that "'the actual conditions of confinement . . . [at Haysi] are cruel and unusual.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (holding that the risk of harm by fire or smoke did not constitute cruel and unusual punishment) (citation omitted).

[8] Construing plaintiff's complaint as alleging that the institutional staff and medical staff at Haysi have been deliberately indifferent to his medical needs by allowing inmates with HIV or tuberculosis to come into an unspecified degree of proximity to plaintiff, such actions do not rise to the level of a federal constitutional violation. To the extent that plaintiff's objections to Haysi's medical screening policies could be construed to state a claim under state negligence laws, such a claim is not colorable under § 1983. See Estelle, 429 U.S. at 105-106. The court adds that functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston, 946 F.2d at 343. Plaintiff has not demonstrated that Haysi's policy of screening inmates' health imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Accordingly, plaintiff has failed to state a claim under the Eighth Amendment because he has not shown that institutional or medical staff were deliberately indifferent to any serious medical need or any other substantial risk of serious harm. Farmer, 511 U.S at 833. Nor has he alleged facts sufficient to show a serious or significant mental or physical injury or an unreasonable risk of serious damage to his future health as a result of Haysi's medical screening policies. Strickler, 989 F.2d at 1380-1381.

[9] The court notes that plaintiff may be a pre-trial detainee at Haysi, or may have been a pre-trial detainee at the time during which the pertinent events are alleged to have occurred, and that the claims of a state pre-trial detainee should be evaluated under the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). However, as a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates. Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997) (excessive force); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (medical needs). Conditions of confinement cannot be considered punishment so long as they are rationally connected to a legitimate, nonpunitive penological purpose and are not excessive in relation to that purpose. Bell, 441 U.S. at 535-538. Accordingly, in evaluating the constitutionality of conditions of confinement for pretrial detainees, the court must determine whether the challenged conditions amount to punishment. Id. As the court has explained in the foregoing analysis of plaintiff's Eighth Amendment claim of cruel and unusual punishment, plaintiff's constitutional rights have not been violated.

11

he does not allege that institutional officials have opened any communications from legal counsel, he does not allege that they have in any way hindered his ability to communicate confidentially with counsel. To establish that his First Amendment or Sixth Amendment rights have been violated by the opening of incoming legal mail, an inmate must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel. See Lewis v. Casey, 518 U.S. 343, 351 (1996) (finding that when an inmate has had access to court, but alleges that officials deprived him of some item necessary for meaningful pursuit of his litigation, such as his already prepared legal materials, the inmate must allege facts showing actual injury or specific harm to his litigation efforts resulting from denial of the item). Therefore, these allegations do not raise a claim of a deprivation of plaintiff's Sixth Amendment right to counsel.

Additionally, to the extent plaintiff alleges that opening his mail in his absence violates his First Amendment rights, it too fails. A prison policy that impinges on an inmate's constitutional right is valid "if it is reasonably related to legitimate penological interests." Altizer v. Deeds, 191 F.3d 540, 547 (1999), citing Turner v. Safley, 482 U.S. 78, 89 (1987). The Fourth Circuit has expressly found that a prison has a legitimate security interest in opening and examining outgoing mail. Altizer, 191 F.3d at 549 (1999). The court can easily conceive of legitimate penological interests in ensuring that no contraband or harmful substance comes into the prison through the mail, thus the mere opening of mail, legal or otherwise, does not raise a claim of constitutional magnitude. Sterling-Earl v. Gray, 2006 WL 1318367 at *6-7 (W.D. Va. May 15, 2006). Furthermore, even assuming that plaintiff has had his legal mail opened outside of his presence, he fails to state a claim for relief. Plaintiff does not allege that any mail that was opened was marked as confidential legal mail; accordingly, he was not entitled to be present while it was opened and inspected. See United

12

States v. Stotts, 925 F.2d 83, 88-90 (4th Cir. 1991). Moreover, he has not alleged that the opening of any of his mail has led to any actual harm or interfered with his ability to communicate with counsel or the courts. Lewis, 518 U.S. at 351; see also White v. White, 886 F.2d 721, 724 (4th Cir. 1989) (to state a claim based on delay or non-delivery of legal mail, an inmate must allege that he suffered actual adverse consequences as a result of the delay or that the non-delivery deprived him of meaningful access to the courts). Finally, state officials cannot be held liable under § 1983 for negligent or intentional destruction, loss, or interference with mail or other personal property. Pink v. Lester, 52 F.3d 73 (4th Cir. 1995)(citing Daniels v. Williams, 474 U.S. 327 (1986)), Bowler v. Young, 2003 WL 24253707 *1 (W.D. Va. June 25, 2003), aff'd, 78 Fed. Appx. 281 (4th Cir. 2003).

For these reasons, this claim will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

### G. Paying for Shoes and Sundries

Plaintiff's claim concerning the denial of free shoes and the requirement that Haysi inmates pay for assorted sundries is frivolous. The jail has a reasonable interest in defraying the costs of incarceration, which may include charging inmates for personal hygiene items and other expenses incurred by the jail in housing inmates. Therefore, such allegations fail to raise a claim of constitutional magnitude. See Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 251-53 (4th Cir. 2005) (holding that the imposition of an $1.00 per day room and board charge does not amount to a "punishment or fine"; nor does the automatic deduction of this fee from an inmate's trust fund account constitute an unconstitutional interference with a property interest); Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3rd Cir. 2000) (finding that charging inmates for toiletries, stamps, and extra blankets does not raise an Eighth Amendment claim). Significantly,

13

regarding the shoes, plaintiff does not argue that he had insufficient funds in his inmate account to pay for a pair of shoes; indeed, his financial information submitted in the course of bringing this complaint indicates that, at the time of the filing of the complaint, he had more than $2,000 in his inmate account. Moreover, plaintiff has not alleged that Haysi officials seek an excessive or unreasonable payment for a pair of shoes, nor has he alleged that Haysi officials refuse to provide shoes to those inmates who are unable to pay for them. Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), as frivolous.

### H. Verbal Abuse

Plaintiff alleges that defendants have been verbally abusive. Mere threats and catcalls do not state a claim of constitutional significance. The constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate a constitutional right); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D. N.Y. 1984) ("the use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a 1983 claim"); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) (observing that "[t]hreats alone are not enough" and that "[a] section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation"); Collins v. Cundy, 603 F.2d 825, 828 (10th Cir. 1979) (holding that the Sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to show the deprivation of a constitutional right); The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true,

14

constitute constitutional violations." Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973). Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

## I. Law Library

Reasonable access by prisoners to both state and federal courts is a guaranteed right. Ex parte Hull, 312 U.S. 456 (1941); see Procunier v. Martinez, 416 U.S. 396 (1974). States must affirmatively provide inmates with either law libraries or persons trained in law to prosecute habeas and civil rights claims. See Bounds v. Smith, 430 U.S. 817, 828 (1977). In other words, access to a law library is required only in the absence of legal assistance. Additionally, to state a claim of a violation of this right, a prisoner must show some interference with his right or some deficiency in the legal resources available to him, as well as evidence of actual injury or specific harm related to litigation. Lewis, 518 U.S. at 351. Plaintiff alleges that he has been denied access to a law library. However, he has failed to allege any facts which suggest that this alleged denial has caused him any actual injury or specific harm.[10] Further, plaintiff's filing of the instant action suggests that his ability to correspond with the courts has not been hindered. Accordingly, the court finds that plaintiff fails to state a claim of inadequate access to legal assistance, and will dismiss this claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

## III. Conclusion

---

[10] Significantly, as the court has previously noted, supra n. 9, plaintiff may be – or may have been at the time he filed this action – a pre-trial detainee, in which case he would have been represented by counsel, and thus not in need of access to a law library.

15

Case 7:07-cv-00494-GEC-mfu   Document 18   Filed 11/07/07   Page 16 of 17   Pageid#: 79

Based on the foregoing, the court finds that plaintiff has not presented any claims that constitute a violation of his constitutional rights. Therefore, the court will dismiss the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).[11]

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 7th day of November, 2007.

_____
United States District Judge

---

[11] Federal law provides that a prisoner may not bring a civil action without complete prepayment of the appropriate filing fee if the prisoner has brought, on three or more occasions, an action or appeal in a federal court that was dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. See 28 U.S.C. §1915(g). Plaintiff is hereby advised that this dismissal constitutes a "strike" under §1915(g). Plaintiff is further advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).